WEIMER, J.,
dissenting.
Li respectfully dissent. The majority reverses the district court’s discovery ruling on a finding “that the surveillance audio tapes were made for the purpose of impeachment of defendants’ witness rather than as direct evidence, and therefore, the production of such impeachment materials should be delayed until after defendants’ witness’ deposition.” O’Dwyer v. Our Lady of the Lake Nurse Anesthesia Program, No. 13-CC-0703 (La.5/17/2013), majority op. at 1254. This finding — that the audio tapes were made for the purpose of impeachment only — is belied by the plaintiffs’ own pleadings. As the plaintiffs candidly acknowledge in their application to this court, “[t]he audio tapes and testimony are unique evidence that may well be used for direct or impeachment purposes.” (Emphasis added.) Indeed, plaintiffs insist “[t]he discovery to be had through Mr. Ellender may be used as substantive, corroborative, or impeachment evidence at trial.” (Emphasis added.)
Given the admitted fact that the audio tapes are not exclusively impeachment evidence, I believe the case is governed by the rationale of Bell v. Treasure Chest Casino, L.L.C., 06-1538 (La.2/22/07), 950 So.2d 654. In Bell, this court limited the |2holding of Wolford v. JoEllen Smith Psychiatric Hospital, 96-2460 (La.5/20/97), 693 So.2d 1164, to surveillance materials made after an incident for purposes of impeaching the plaintiff:
Throughout the opinion [in Wolford ], this Court, although using the generic term “surveillance videotape,” clearly was speaking of surveillance videotapes made after an injury had occurred, for the purpose of impeaching a plaintiff as to the extent of his or her personal injury and any claimed limitations resulting therefrom. As stated, in such a case, the plaintiff would have the burden of showing special circumstances allowing pre-deposition disclosure. In other cases, such as the instant one, where a surveillance videotape shows the actual accident and was not created for the *1255 specific purpose of impeaching the plaintiff, surveillance videotapes are ... generally discoverable under our discovery rules. Because the videotapes are generally discoverable, it is the defendant, rather than the plaintiff, which must show special circumstances which would require postponing the production of the material.
Bell, 06-1538 at 3, 950 So.2d at 656. In this case, while the audio tapes were made after the incident forming the basis of this case (the termination of plaintiffs from the nursing program), there is no indication (as plaintiffs’ pleadings confirm) they were made exclusively for impeachment purposes; although, in addition to providing direct evidence of the defendants’ alleged wrongdoing, they may also serve that purpose. As a result, following the reasoning of Bell, I believe the audio tapes are discoverable, absent a showing of special circumstances by the plaintiffs.
In its review of the matter, the district court did not find any special circumstances that would justify delaying production of the audio tapes pending the deposition of Phyllis Pederson. Considering the broad discretion afforded to the district court when regulating pre-trial discovery (Moak v. Illinois Central Railroad Company, 93-0783 (La.1/14/94), 631 So.2d 401, 406-407) I cannot find any basis for concluding that the decision of the district court was an abuse of that broad discretion. Therefore, I respectfully dissent from the majority opinion.