STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2024 CA 0201

ALLEN ROBINSON

VERSUS

STEVE WILLIAMS, CONTINENTAL FREIGHT, PROGRESSIVE
INSURANCE, AND STARR INDEMNITY

Judgment Rendered: **DEC 1 1 2024**

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 718215

Honorable Beau Higginbotham, Judge Presiding

* * * * *

Willie G. Johnson, Jr.
Sophia J. Riley
James L. Maughan
Baton Rouge, LA

Attorneys for Plaintiff-Appellant,
Allen Robinson

D. Scott Rainwater
Heidi B. Beiber
Chris W. Caswell
Baton Rouge, LA

Attorneys for Defendant-Appellee,
Starr Indemnity & Liability Insurance
Company

* * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

**HESTER, J.**

Plaintiff, Allen Robinson, appeals the trial court's grant of summary judgment in favor of defendant, Starr Indemnity & Liability Company (Starr), finding that a valid uninsured/underinsured motorist coverage (UM) rejection form was executed by the policyholder and dismissing plaintiff's claims against Starr with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

This suit arises from a January 12, 2022, motor vehicle accident. Plaintiff was a passenger in a 2018 Dodge Ram 3500 (Ram 3500), operated by Clinton Prescott and owned by "EIR, Inc.," when a 2013 Ford F150 driven by Steve Williams struck the Ram 3500. Plaintiff filed a petition for damages on April 25, 2022, naming as defendants Williams; Continental Freight, Inc., the employer of Williams; Progressive Insurance Company, the insurer of Continental Freight, Inc.; and Starr, the UM insurer of EIR, Inc.

On November 22, 2022, Starr filed a motion for summary judgment on the basis that Starr did not issue a policy of insurance to EIR, Inc., the owner of the Ram 3500.[1] In support of the motion, Starr submitted the affidavit of Mark Killion, Starr's Assistant Vice President of Transportation & Commercial Auto Claims, who attested that he conducted a due diligence search of Starr's records. As a result of such search, Killion stated that there was no record of any policy issued to a company by the name of EIR, Inc. and further stated that Starr did not have a policy of insurance, including but not limited to UM, providing coverage to EIR, Inc. at the time of the accident on January 12, 2022. The initial hearing on Starr's motion for summary judgment was continued without date and, ultimately, the matter was removed from the docket at the request of Starr on May 9, 2023.

---

[1] The record contains two identical motions for summary judgment filed by Starr: one e-filed on November 22, 2022 and one filed traditionally on November 28, 2022.

On June 12, 2023, Starr filed its answer and affirmative defenses to plaintiff's petition, generally denying the allegations therein. Particularly, Starr denied paragraph eleven of the petition, which alleged that Starr issued a policy of UM insurance to EIR, Inc., "bearing Policy [No.] 10006261202, with an expiration date of May 9, 2022." In further answering, Starr stated that "EIR, Inc. properly executed a UM [waiver] form."

Thereafter, on August 1, 2023, Starr filed a second motion for summary judgment, seeking dismissal of plaintiff's claims against it. According to Starr, it issued a policy of insurance to "Environmental Industries Recycling, Inc. ('EIR, Inc.')," insuring the Ram 3500 at issue, but the policy contained a valid, enforceable UM waiver form, rejecting UM coverage for bodily injury ("UMBI coverage"). In support of its motion for summary judgment, Starr attached the plaintiff's petition; the affidavit of Buddy Dupuy with attached exhibits; Louisiana Commissioner of Insurance ("Commissioner") Bulletin No. 08-02; and Starr's discovery responses dated May 31, 2023.[2]

According to the affidavit of Dupuy, he is the owner and president of Environmental Industries Recycling, Inc. and acts on behalf of and is the authorized representative of Environmental Industries Recycling, Inc. in selecting insurance coverage. Dupuy attested that Environmental Industries Recycling, Inc. contracted with Starr for its insurance coverage and obtained a policy of insurance bearing Policy No. 1000626061201 (Starr Policy). Dupuy stated that the Starr Policy

---

[2] We note that the discovery responses were unsworn and unverified; however, no objections were made by plaintiff. However, this court determines, de novo, if any evidentiary value should be given to the documents. See **Pottinger v. Price**, 2019-0183 (La. App. 1st Cir. 10/23/19), 289 So.3d 1047, 1053. Answers to interrogatories that are neither made under oath nor an attestation made before a notary public that the interrogatories were answered under oath, are not competent summary judgment evidence. **Brown & Root Indus. Servs., LLC v. Farris**, 2023-0706 (La. App. 1st Cir. 6/27/24), 392 So.3d 424, 428 n.4, writ denied, 2024-00954 (La. 11/14/24), --- So.3d ---. As noted in La. Code Civ. P. art. 966, comments—2015, comment (c), "[La. Code Civ. P. art.] 1458 requires that interrogatories be answered under oath, and only answers that are made under oath may be filed in support of or in opposition to a motion for summary judgment." Accordingly, the discovery responses attached to Starr's motion are not competent summary judgment evidence.

3

provided insurance for the Ram 3500 at the time of the accident and further stated that the policy period began on May 9, 2021 and ended on May 9, 2022. Dupuy attested that he executed a UM waiver associated with the Starr Policy, rejecting UMBI coverage, and that no premiums were paid for this coverage. According to Dupuy, he "explicitly rejected [UM] Coverage in 2021 for policy number 100026061201 issued by [Starr] to Environmental Industries Recycling, Inc.[] for this vehicle." Both the Starr Policy for the policy period May 9, 2021 through on May 9, 2022 and the UM waiver dated May 7, 2021, were attached to Dupuy's affidavit.

On September 15, 2023, plaintiff filed a "Motion to Compel the Deposition of Affiant Mark Killion and Buddy Dupuy, and Alternatively Continuance" and attached the following exhibits thereto: e-mail correspondence between counsel for plaintiff and defendant; Starr's discovery responses dated May 31, 2023; e-mail correspondence between counsel for plaintiff and defendant regarding depositions and Rule 10.1 conference; the affidavit of Killion; the affidavit of Dupuy; and the Rule 10.1 certificate.

In the memorandum in support of his motion, plaintiff argued that he was entitled to a continuance to conduct additional discovery. Plaintiff maintained that the affidavits of Killion and Dupuy created a contradiction and that he was entitled to conduct depositions of the affiants in order to determine the issues relating to the existence of insurance coverage. Further, plaintiff argued that the UM waiver form did not contain any policy numbers or otherwise identify the insuring object or persons such that a genuine issue of material fact exists as to whether the UM waiver form is applicable. Plaintiff also argued that Starr failed to establish that the UM waiver form was sufficient to meet its burden of proof on the motion for summary judgment and requested, in the alternative, that the motion for summary judgment be denied.

4

On September 15, 2023, plaintiff also filed "Plaintiff's Genuine Issues of Material Fact,"[3] which stated as follows:

1.    Mark Killion testifies in his Affidavit of November 21, 2022 that there was no policy of insurance issued to the company by the name of EIR, Inc., and that on January 12, 2022 [Starr] had no policy of insurance, including but not limited to UM/UIM providing coverage to EIR, Inc.

2.    Buddy Dupuy, the insured, acknowledges coverage, but that there is a UM rejection.

3.    In the UM rejection, there is no mention of EIR, Inc. and there is no independent evidence that Buddy Dupuy is a representative of the company made subject of the litigation.

4.    There is no evidence that Buddy Dupuy had authority to execute the UM rejection form.

The hearing on the motion for summary judgment was set for October 2, 2023, and the hearing on plaintiff's motion to compel was set for November 6, 2023. At the October 2, 2023 hearing, the trial court reassigned the matter for hearing on November 6, 2023. On November 6, 2023, the trial court denied plaintiff's motion to compel and granted Starr's motion for summary judgment, thereby dismissing plaintiff's claims against Starr with prejudice. The trial court memorialized its ruling in a judgment dated December 4, 2023. Plaintiff appealed and assigned as error the trial court's grant of Starr's motion for summary judgment.

## LAW AND ANALYSIS

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to determine whether there is a genuine need for trial. **Louisiana Workers' Compensation Corp. v. B, B & C Associates, LLC**, 2017-1342 (La.

---

[3] In view of the arguments in opposition to Starr's motion for summary judgment contained in plaintiff's motion and corresponding memorandum in support and plaintiff's list of genuine issues of material fact, we construe these pleadings and documents filed with the trial court to be a timely opposition pursuant to La. Code Civ. P. art. 966(B)(2). See **State, Dep't of Children & Family Servs. ex rel. A.L. v. Lowrie**, 2014-1025 (La. 5/5/15), 167 So.3d 573, 578 (finding that each pleading must be reasonably construed so as to afford the litigant his day in court, arrive at the truth, and do substantial justice and that pleadings are taken for what they actually are and not for what their authors designate them); **Smith v. Cajun Insulation, Inc.**, 392 So.2d 398, 402 n.2 (La. 1980) ("Courts should look through the caption of pleadings in order to ascertain their substance and to do substantial justice to the parties.").

App. 1st Cir. 4/9/18), 249 So.3d 18, 22. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3). A "genuine" issue is a triable issue, which means that an issue is genuine if reasonable persons could disagree; if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. **Kasem v. State Farm Fire & Cas. Co.**, 2016-0217 (La. App. 1st Cir. 2/10/17), 212 So.3d 6, 13.

The initial burden of proof is on the mover. See La. Code Civ. P. art. 966(D)(1). When the mover will bear the burden of proof at trial, the mover has the burden of making a *prima facie* showing that no genuine issue of material fact remains. Only when the mover makes this showing does the burden shift to the opposing party to present evidence demonstrating a material factual issue remains. **Gulf South Psychiatry, L.L.C. v. Greenbrier Hospital, L.L.C.**, 2020-0957 (La. App. 1st Cir. 4/16/21), 323 So.3d 880, 883 (citing **Action Oilfield Services, Inc. v. Energy Management Co.**, 2018-1146 (La. App. 1st Cir. 4/17/19), 276 So.3d 538, 541-542). Moreover, if the party moving for summary judgment will bear the burden of persuasion on the subject issue at trial, that party must support his motion with credible evidence that would entitle him to a directed verdict if not controverted at trial. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 766 (*per curiam*). Therefore, in deciding a motion for summary judgment, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. **Jenkins v. Hernandez**, 2019-0874 (La. App. 1st Cir. 6/3/20), 305 So.3d 365, 370-71, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315.

Appellate courts review summary judgments *de novo*, using the same standards applicable to the trial court's determination of the issues, and ask the same questions the trial court does in determining whether summary judgment is appropriate. **Cabana Partners, LLC v. Citizens Bank & Trust Co.**, 2018-0133 (La. App. 1st Cir. 12/21/18), 269 So.3d 986, 990. See also La. Code Civ. P. art. 966(A)(3).

Here, Starr sought, through summary judgment, to establish that no UM/UIM coverage for bodily injury was afforded under the policy issued to Environmental Industries Recycling, Inc. As the mover, Starr bore the initial burden and would also bear the ultimate burden of proof at trial on this issue.

In Louisiana, UM coverage is provided for by statute (La. R.S. 22:1295) and embodies a strong public policy. **Duncan v. U.S.A.A. Ins. Co.**, 2006-363 (La. 11/29/06), 950 So.2d 544, 547. The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. **Id**. Whether coverage exists turns on the interpretation of the policy and UM statute. **Berkley Assurance Co. v. Willis**, 2021-01554 (La. 12/9/22), 355 So.3d 591, 593.

According to La. R.S. 22:1295(1)(a)(i), "[n]o automobile liability insurance [policy] ... shall be delivered or issued for delivery in [Louisiana] ... unless [UM] coverage is provided...." However, UM coverage is not required "when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in [La. R.S. 22:1295](1)(a)(ii) ...." Louisiana Revised Statutes 22:1295(1)(a)(i) further provides that "[s]uch coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer...." Louisiana Revised

7

Statutes 22:1295(1)(a)(ii) sets forth the proscribed manner for rejecting coverage, specifically providing as follows:

> Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original [UM] selection or rejection on a policy at any time during the life of the policy by submitting a new [UM] selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new [UM] selection forms. For the purpose of this Section, a "new policy" shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.

Because the requirement of UM coverage is an implied amendment to any automobile liability policy, UM coverage is read into the policy unless validly rejected. **Berkley Assurance Co.** 355 So.3d at 594 (quoting **Duncan**, 950 So.2d at 547). It is well-settled that the UM statute is liberally construed and exceptions to coverage are interpreted strictly. **Id.**

An insurer has the burden of proving by clear and unmistakable evidence that a UM selection form is valid. **Henderson v. Lashouto**, 2017-1537 (La. App. 1st Cir. 5/7/18), 2018 WL 2250576, *2 (unreported), writ denied, 2018-0996 (La. 10/8/18), 253 So.3d 794 (relying on **Gray v. American Nat. Property & Cas. Co.**, 2007-1670 (La. 2/26/08), 977 So.2d 839, 849). A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected UM

8

coverage, selected a lower limit, or selected economic-only coverage. La. R.S. 22:1295(1)(a)(ii). Further, the form signed by the named insured or his legal representative which initially rejects such coverage shall be conclusively presumed to become a part of the policy when issued and delivered, irrespective of whether physically attached thereto. La. R.S. 22:1295(1)(a)(ii); **Gray**, 977 So.2d at 845.

As set forth in **Berkley Assurance Co.**, 355 So.3d at 595, the UM form dictates the requirements for a valid rejection or selection of lower limits of coverage. Quoting **Duncan**, 950 So.2d at 552-53, the Supreme Court in **Berkley Assurance Co.**, 355 So.3d at 595, stated "[i]n directing the commissioner of insurance to prescribe a form, the legislature gave the commissioner the authority to determine what the form would require" such that "compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid."

Pursuant to the authority granted under La. R.S. 22:1295(1)(a)(ii), the Commissioner promulgated Bulletin 08-02 together with a revised UM waiver form, effective on or after January 1, 2010, which is the current form. The current UM waiver form requires as follows:

> 1) initialing the selection or rejection of coverage chosen; 2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and each accident; 3) printing the name of the named insured or legal representative; 4) signing the name of the named insured or legal representative; 5) filling in the insurer's name, the group name, or the insurer's logo; and 6) filling in the date.

**Berkley Assurance Co.**, 355 So.3d at 596. Failure to properly complete the UM form results in an invalid rejection or selection of lower limits of UM coverage. **Id**.

As established in the motion for summary judgment and supporting documents, Dupuy initialed the rejection of UMBI coverage, fulfilling the first requirement. The second requirement is not applicable to the facts herein as lower limits were not selected (because coverage was rejected). The name of the insurer,

9

Starr, is provided in lower right-hand box at the bottom of the form, satisfying the fifth requirement. The bottom of the form is dated "5/9/21," fulfilling the sixth requirement. Lastly, Dupuy, as the authorized representative of Environmental Industries Recycling, Inc. in selecting insurance coverage, signed and printed his name, satisfying the third and fourth requirements.

In view of the summary judgment evidence submitted, we find that Starr carried its burden of proof as mover that (1) the UM waiver form was valid, thereby waiving UMBI coverage for the Starr policy for the period of May 9, 2021 through May 9, 2022; (2) no genuine issue of facts remained; and (3) it was entitled to judgment as a matter of law. Accordingly, it was incumbent on plaintiff to establish that there was a genuine issue of fact for trial. See **Neighbors Fed. Credit Union v. Anderson**, 2015-1020, (La. App. 1st Cir. 6/3/16), 196 So.3d 727, 734-35.

Despite the satisfaction of all requirements for the proper completion of the UM waiver form, plaintiff argued that the UM waiver failed to contain any policy numbers and failed to contain the "precise nature of the insuring object and/or persons." However, the policy number is not required to be included on the form nor is the "precise nature of the insuring object and/or persons." Completion requires filling out the UM waiver form in its entirety *except where otherwise indicated on the face of the form.* **Berkley Assurance Co.**, 355 So.3d at 596. Bulletin 08-02 made specific changes to the UM waiver form by mandating the inclusion of the two boxes on the lower right corner of the form: one for the insurer's name and/or logo and one for information for policy identification purposes. The descriptive "Optional" appears in the box provided for "Information for Policy Identification Purposes Only," but no such language appears in the box provided for the insurer's name. What is not optional is mandatory; therefore, the insurer's name is mandatory, but the information for policy identification purposes is not required by the UM waiver form prescribed by Bulletin 08-02. See **Id**. at 595. The fact that

10

the box stating "Policy Number (Optional)" was unfilled on the UM waiver form in this case did not render the form invalid.

Plaintiff also argued that a material issue of fact existed because the UM waiver form failed to indicate in what capacity Dupuy signed the UM waiver form. A corporate insured cannot sign its own name on a UM waiver form, so it must act through its legal representative. The legal representative does not need prior written authority to sign on behalf of the corporate insured – such authority may be verbal and subsequently established by affidavit. **Havard v. Jeanlouis**, 2021-00810 (La. 6/29/22), 345 So.3d 1005, 1007. Here, Dupuy's affidavit established that he acted as the authorized representative of Environmental Industries Recycling, Inc. in selecting insurance coverage and that he executed the UM waiver form associated with the Starr policy at issue, rejecting UMBI coverage. Additionally, neither La. R.S. 22:1295(1)(a)(ii) nor the UM waiver form prescribed by the Commissioner requires that a signatory, like Dupuy, indicate in what capacity he signed the form. The UM waiver form has only a blank for the "Signature of Named Insured or Legal Representative" and a blank for the signatory to "Print Name," which Dupuy properly completed.

Accordingly, plaintiff's sole assignment of error is without merit.

While not specifically raised as an assignment of error,[4] plaintiff argued that he was entitled to additional discovery and attorney fees in connection with his motion to compel.[5] In response to Starr's summary judgment, plaintiff sought to compel depositions and also argued that he was entitled to a continuance in order to

---

[4] In the interest of justice, we will address the arguments raised in plaintiff's brief. See Rule 1-3, Uniform Courts of Appeal (providing that "[t]he Courts of Appeal shall review issues that were submitted to the trial court and that are contained in specifications or assignments of error, unless the interest of justice requires otherwise").

[5] Louisiana Code of Civil Procedure article 1469(4) permits the recovery of reasonable expenses incurred in obtaining an order compelling discovery, including attorney's fees, under certain circumstances; however, plaintiff was not successful in obtaining an order compelling discovery and not entitled to such recovery.

conduct additional discovery. However, we are unable to conclude that the trial court abused its discretion in denying plaintiff's requests. <u>See</u> **Bell v. Treasure Chest Casino, L.L.C.**, 2006-1538 (La. 2/22/07), 950 So.2d 654, 656 ("[A] trial judge has broad discretion in regulating pre-trial discovery, which discretion will not be disturbed on appeal absent a clear showing of abuse of that discretion."); **Rover Grp., Inc. v. Clark**, 2021-1365 (La. App. 1st Cir. 4/8/22), 341 So.3d 842, 846, <u>writ denied</u>, 2022-00766 (La. 9/20/22), 346 So.3d 287 ("[A] trial court has wide discretion in the control of its docket, case management, and the determination of whether a continuance should be granted."). There is no absolute right to delay action on a motion for summary judgment until discovery is complete. Rather, the requirement is only that the parties have a fair opportunity to carry out discovery and to present their claim. La. Code Civ. P. art. 966(A)(3); **Bertrand v. Jefferson Arms Apartments, LLC**, 2022-1195 (La. App. 1st Cir. 4/14/23), 366 So.3d 595, 606 n.9. Moreover, plaintiff failed to comply with the provisions of La. Code Civ. P. art. 967(C) requiring him to file an affidavit stating the reasons why he could not present by affidavit facts essential to justify his opposition to the motion for summary judgment to allow the court to consider whether to order a continuance or to allow discovery. **Paul v. LDG Port Royal Dev., L.L.C.**, 2021-0269 (La. App. 1st Cir. 10/18/21), 2021 WL 4843937, *3, <u>writ not considered</u>, 2021-01722 (La. 1/12/22), 330 So.3d 616.

## CONCLUSION

For the foregoing reasons, the November 6, 2023 judgment denying Allen Robinson's motion to compel, granting Starr Indemnity & Liability Company's motion for summary judgment, and dismissing plaintiff's claims against Starr with prejudice is affirmed. Costs of this appeal are assessed to appellant, Allen Robinson.

**AFFIRMED.**

12